Robert M. Schwartz (#117166/rschwartz@omm.com)
James M. Pearl (#198481/jpearl@omm.com)
Harrison A. Whitman (#261008/hwhitman@omm.com)
Nikolas A. Primack (#274577/nprimack@omm.com)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Attorneys for Plaintiff StudioCanal (US)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| StudioCanal (US), a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>Universal City Studios, LLC, a limited liability company and subsidiary of NBCUniversal, LLC, a Delaware limited liability company; UNIVERSAL CITY STUDIOS, INC., a corporation organized under the laws of Delaware; and Does 1-50,<br><br>    Defendants. | Case No. CV13-2250 GW (AGRx)<br><br>**OPPOSITION OF PLAINTIFF STUDIOCANAL TO MOTION OF DEFENDANT UNIVERSAL TO COMPEL ARBITRATION AND STAY COURT PROCEEDING**<br><br>Hon. George H. Wu<br><br>Hearing Date: June 3, 2013<br>Time: 8:30 a.m.<br>Courtroom: 10<br><br>[Declarations of Michele A. Gentille, Christine Corner, and Harrison A. Whitman Filed Concurrently Herewith] |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 4

III. UNIVERSAL'S MOTION TO COMPEL IS UNNECESSARY. ....................... 6

IV. THE COURT SHOULD DENY A DISCRETIONARY STAY. ........................ 6

    A.  There Is No Pending Arbitration. ............................................................. 6

    B.  StudioCanal Would Be Prejudiced If This Action Is Stayed. ................... 8

    C.  A Stay of This Litigation Will Not Promote Judicial Efficiency ............. 9

        1.  Resolution of CDA Disputes Would Not Streamline This Action. ................................................................................................ 9

        2.  There Would Not Be Duplicative Discovery. ................................. 12

        3.  There Would Not Be Inconsistent Rulings. .................................... 13

V.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*,
   629 F. 2d 961 (4th Cir. 1980) .................................................................................. 14

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) .................................................................. 14

*Cal. Dep't of Water Res. v. Powerex Corp.*,
   653 F. Supp. 2d 1057 (E.D. Cal. 2009) .................................................................. 11

*Chronicle Publ'g Co. v. Nat'l Broad. Co.*,
   294 F.2d 744 (9th Cir. 1961) ............................................................................ 12, 13

*Clinton v. Jones*,
   520 U.S. 681, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ...................................... 6

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1983) ................................................................................ 7, 8

*Ginorio v. State Farm Mut. Auto. Ins.*,
   No. 2:07-cv-01403-MCE-DAD, 2007 WL 2492400 (E.D. Cal.
   Aug. 30, 2007) ........................................................................................................ 12

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ................................................................................. 11

*Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*,
   No. CV 08–5773 JSW, 2009 WL 1010842 (N.D. Cal. Apr. 14, 2009) .................. 14

*McLeod v. Ford Motor Co.*,
   No. EDCV 04-1255VAPSGLX, 2005 WL 3763354 (C.D. Cal.
   Apr. 14, 2005) ........................................................................................................... 7

*Negotiated Data Solutions, LLC v. Dell, Inc.*,
   No. CV-03-05755 JSW, 2008 WL 4279556 (N.D. Cal. Sept. 16, 2008) ................. 6

*SEC v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) .................................................................. 14

## I. INTRODUCTION

Defendant Universal asks the Court to bar plaintiff StudioCanal from proceeding with this case on the grounds that StudioCanal's claims are being addressed in a pending arbitration, raising the prospect of overlapping discovery, duplicative expense, and inconsistent results. Every element of that assertion—every aspect of Universal's motion—is false.

To begin, **there is no pending arbitration**. The arbitration provision to which Universal refers is found in a different contract than the one StudioCanal is suing on, and it covers a different set of motion pictures than the ones at issue here. Universal fails to mention that the other contract prohibits StudioCanal from serving even a demand for arbitration until the parties have first mediated. Only if the mediation fails can StudioCanal initiate an arbitration. But the mediation is at least two months away (the parties are trying to organize it for July), and has not occurred, much less failed, triggered StudioCanal's right to demand arbitration, or led to the existence of a pending arbitration. In short, there is no legal proceeding to stay this case in favor of.

Second, even if an arbitration concerning those other motion pictures were underway, **there is no known prospect of inconsistent results**. Other than paying rhetorical homage to the mention in arbitration case law of "inconsistent results," Universal fails to identify a single claim or issue in this lawsuit where the same facts could lead to results different here from the results in that potential arbitration. Nor could Universal do so: Until the mediation occurs, neither party knows what issues will be resolved, what issues will remain, and whether any of them will overlap the issues in this case. Universal can do no more than speculate. In fact, such a result would be unlikely. At issue in this lawsuit is whether Universal properly accounted to StudioCanal for its share of the revenues on each of the twenty-one motion pictures produced under the parties' 1999 Joint Venture Agreement ("JVA"). The fact that the contractual formula for the inclusion of revenue and the deduction of costs is similar to the formula found in the parties' other contract tells the Court nothing. The claims

concerning each motion picture stand or fall based on the facts unique to each motion picture. Thus, whether Universal fully accounted to StudioCanal for the home video revenue from a film governed by the CDA does not bear on whether Universal fully accounted for the home video revenue from a motion picture governed by the JVA. Universal has failed to explain how that could lead to inconsistent results, and there is no logical reason why it would.

Third, **there is no risk of duplicative discovery**. Because the issues on each motion picture are specific to each one, the discovery should not overlap. Where Universal engaged in a common practice in violation of its obligations, the discovery still will be targeted to the specific provision in that contract. (As explained below, the contracts' formulae are similar but not identical.) But even if potentially overlapping discovery issues arise, Universal is represented by experienced counsel and the parties can stipulate to allow discovery from one case to be used in the other to ensure that, for example, witnesses are not deposed more than once on the same issue and that the same documents are produced only once. Courts and litigants manage these issues in MDL and federal-state coordinated proceedings every day. So can the parties here.

To make it look as if the claims here arise predominantly under the contract subject to arbitration, Universal does the term "Hollywood Accounting" proud. Universal has manufactured conclusions about the percentage of claims in the audit reports that concern one contract versus the other. As explained below, the analysis is distorted and misleading, and its conclusions are erroneous.

Universal's motion is not only baseless, it serves ill ends. Universal seeks from this Court something it neither requested nor obtained at the bargaining table. Even though StudioCanal is largely based and managed in France, it agreed in the 1999 contract that any disputes arising out of that contract would be litigated in court, in California. When that agreement ended in 2003, the parties agreed to continue their partnership but on different terms. They negotiated a new contract—the Co-Financing and Distribution Agreement (the "CDA") that ran through 2010. The CDA

contained a different dispute resolution provision.  Instead of adjudicating disputes in California courts, the parties agreed to a multi-phased mediation/arbitration process.  The parties could have swept disputes arising under their prior partnership into that procedure.  They did not.  Universal seeks now to re-write the second contract to deny StudioCanal its right to pursue here claims arising under the first.

Universal's motion thus not only requires the Court to revise the parties' contract, the remedy Universal seeks would be unfairly prejudicial.  An arbitration conducted under the CDA is not subject to the Federal Rules.  StudioCanal's discovery rights are extremely limited (e.g., it gets only one deposition).  StudioCanal may not be able to obtain the evidence it needs to establish the extent of Universal's malfeasance.  Universal asks the Court—ironically, in the interest of justice—to use that constrained arbitration to then bias the Court's determination of StudioCanal's rights on a different set of motion pictures.  That is not fair to StudioCanal.

Universal also seeks this relief to delay the day of reckoning on its accountings and the duty to pay StudioCanal the tens—if not hundreds—of millions of dollars it owes its partner as part of investing over one-half <u>billion</u> dollars in Universal's films.  That strategy began in 2008, when StudioCanal notified Universal that it wanted to exercise its audit rights.  Universal made StudioCanal wait three years before allowing the auditors to begin their work.  During the audits, Universal hid behind the passage of time by claiming that it no longer possessed documents needed to substantiate its activity.  Even where Universal possessed requested information, it frequently refused to share it with its partner, in violation of its fiduciary duties.  When StudioCanal's auditors concluded their work last Fall, their reports reflected the incompleteness of their work because of Universal's intransigence.  In some cases, Universal claimed to have generated zero dollars from forms of exploitation that are normally huge sources of revenue, such as home video and music.  Even worse, after StudioCanal submitted the reports, Universal stopped issuing accounting statements and payments.  It then promised to discuss and informally resolve the matters; but after one meeting (at

1 which it said it was insufficiently prepared), Universal stopped talking at all. After
2 more months of delay and lack of cooperation, StudioCanal had no choice but to sue.
3     It is therefore not surprising that Universal's response to this lawsuit is to
4 request a stay on the basis of a phantom arbitration, the effect of which would be to
5 prevent StudioCanal from going forward at all. That would be a perversion of
6 StudioCanal's rights. The Court should deny Universal's request.

## II.    BACKGROUND

    In 1999, StudioCanal and Universal partnered to fund the development, production, and distribution of Working Title Films' motion pictures. The governing document for this partnership—the JVA—had a five-year term, from January 1, 1999 through December 31, 2003, during which StudioCanal contributed well over $200 million towards the development and production of twenty-one feature films.

    After the conclusion of the JVA, StudioCanal and Universal extended their partnership on different terms. Accordingly, the parties drafted a new agreement: the CDA. The CDA (and its amendments) redefined the parties' obligations and entitlements, and, among other changes, established a mediation/arbitration procedure to govern disputes arising out of the new agreement.

    When drafting the CDA, the parties took the opportunity to retroactively adjust certain provisions of the JVA. For example, under paragraph 1 of the CDA, all films that were still in development at the conclusion of the JVA would no longer be governed by that agreement's applicable provisions, Mot., Jacobson Decl., Ex. A ¶ 17; rather, they would be folded into the CDA. Mot., Jacobson Decl., Ex. B ¶ 1. At the same time, the parties did not apply the new dispute resolution section to disputes arising out of the prior JVA. *Id.* ¶ 16. Under this new CDA partnership, StudioCanal and Universal funded the development, production, and distribution of twenty-three motion pictures.

    In 2008, StudioCanal informed Universal that it was going to exercise its audit rights under the JVA and the CDA. For three years, however, Universal did not allow

1  StudioCanal's auditors to start the process. Given the size and scope of the parties
2  relationship, spanning over a decade and more than forty films, the auditors conducted
3  a limited review. Declaration of Michele A. Gentille ¶ 5; Declaration of Christine
4  Corner ¶¶ 4, 7, 9 & 11. For most issues, they selected six of the forty-four films
5  and/or sampled only a portion of Universal's distribution activity. Gentille Decl., ¶ 5;
6  Corner Decl., ¶¶ 4, 7, 9 & 11.

7  Once the audit process finally commenced, StudioCanal's auditors faced
8  difficulties due to Universal's inability or refusal to provide critical information and
9  supporting documents. Gentille Decl., ¶ 7; Corner Decl., ¶¶ 7, 13. Despite Universal's
10 failure to provide much of this information, in September and October 2012, the
11 auditors issued reports indicating that Universal owed tens of millions of dollars to
12 StudioCanal based on just the limited audits. *See* Mot., Bradley Decl., Ex. A.

13 Given the parties' longstanding relationship and the serious concerns raised in
14 the audit reports, StudioCanal hoped to resolve the issues with Universal amicably.
15 Unfortunately, after months of frustration and delay, StudioCanal had made no
16 progress—again, largely because of Universal's intransigence in providing documents
17 to support its distribution and accountings. Left with no other option, StudioCanal
18 filed this lawsuit on February 28, 2013 to resolve its claims related to the twenty-one
19 films governed by the JVA. And, consistent with the CDA's dispute resolution
20 provision, StudioCanal sent Universal a letter to request mediation of its claims on the
21 CDA films. Mot., Kelly Decl., Ex. A.

22 After StudioCanal filed the lawsuit, Universal reassured it that the parties could
23 reach a prompt, amicable resolution of their disputes. Universal executives promised
24 to provide documents to StudioCanal that would allow the parties to narrow the
25 outstanding issues. Against this backdrop, Universal asked StudioCanal if it would
26 dismiss its federal suit and adjudicate claims arising out of the JVA in an arbitration.
27 Mot., Kelly Decl., Ex. B. If StudioCanal did not agree, Universal would file a motion
28 to compel arbitration for two specific issues and request a stay of the rest of the

1  lawsuit. *Id.* StudioCanal declined to waive its rights to litigate Joint Venture disputes.
2  *Id.* However, StudioCanal did agree to remove the two specific claims Universal
3  identified from its lawsuit. *Id.*

4  **III.     UNIVERSAL'S MOTION TO COMPEL IS UNNECESSARY.**

5        As Universal acknowledges, StudioCanal agreed to remove two arguably-arbitral
6  claims from the case before Universal filed its motion. Mot. at 2, 10. StudioCanal
7  communicated its agreement three days before Universal filed its motion. And, to be
8  clear, Universal was under no deadline to file this motion on May 6. *Id.* Universal
9  never responded or said that an additional representation was necessary. *Id.*, Kelly
10 Decl., Ex. B. Instead, Universal filed its motion because StudioCanal had not
11 expressly agreed to amend its complaint. *Id.* at 10. If this were truly Universal's
12 concern, it simply could have asked StudioCanal whether it would amend. Universal
13 never did so. *Id.*, Kelly Decl., Ex. B. Nevertheless, no Court action is required since
14 StudioCanal has agreed to remove these claims from the lawsuit and arbitrate them,
15 should mediation fail.

16 **IV.     THE COURT SHOULD DENY A DISCRETIONARY STAY.**

17       Universal asks the Court to exercise its discretion to stay this action while the
18 parties arbitrate separate disputes related to motion pictures governed by a different
19 agreement: the CDA. Universal's naked assertions of judicial efficiency do not satisfy
20 its burden to demonstrate that a stay is justified. *See Clinton v. Jones*, 520 U.S. 681, 707,
21 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("proponent of a stay bears the burden of
22 establishing its need"); *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. CV-03-05755
23 JSW, 2008 WL 4279556, at *1 (N.D. Cal. Sept. 16, 2008) (same).

24     **A.     There Is No Pending Arbitration.**

25       Universal bases its request for a stay on the assertion that there is a currently-
26 pending arbitration related to CDA films that should be given priority over this
27 litigation. *See, e.g.*, Mot. at 1 ("On February 28, 2013, plaintiff StudioCanal (US) []
28 initiated … an arbitration proceeding"). That is false. There is no pending arbitration

- 6 -  STUDIOCANAL'S OPPOSITION TO UNIVERSAL'S MOTION TO STAY

between Universal and StudioCanal, and, in fact, neither party is even permitted to <u>initiate</u> an arbitration at this point.

Paragraph 16 of the CDA sets forth a multi-step dispute resolution process. If a dispute arises, the parties must first attempt to resolve it between themselves. If that informal process is unsuccessful (which it was, from October 2012 through February 2013), the parties must mediate the dispute before a retired judge. Mot., Jacobson Decl., Ex. B ¶ 16. At present, the parties have agreed to mediate the CDA disputes before Hon. Terry Friedman (Ret.) and plan to hold the mediation in July 2013. Declaration of Harrison A. Whitman ¶ 2. ***If*** there are still disputes between the parties after the conclusion of the mediation, "<u>then</u> either party may <u>initiate</u> arbitration of such Dispute(s)." Mot., Jacobson Decl., Ex. B ¶ 16(a) (emphasis added); *see also* Mot., Kelly Decl., Ex. A at 1 ("***If*** the mediation is not successful, StudioCanal will proceed with an arbitration….) (emphasis added).

StudioCanal and Universal are still months away from knowing whether there will be an arbitration, what the issues in an arbitration would be, or the timeframe for conducting or completing an arbitration. None of the generic case law cited in Universal's motion supports the proposition that a court should exercise its discretionary powers to stay a pending lawsuit until the resolution of an undefined, yet-to-be-initiated arbitration. Indeed, the cases Universal cites support the proposition that the Court should "exercise sound discretion" and consider whether such a stay will harm the parties or promote "the orderly course of justice" by "simplifying or complicating" the issues in the case. *CMAX, Inc. v. Hall*, 300 F.2d 265, 267 (9th Cir. 1983); *see also McLeod v. Ford Motor Co.*, No. EDCV 04-1255VAPSGLX, 2005 WL 3763354, at *2 (C.D. Cal. Apr. 14, 2005) (in deciding whether to stay non-arbitral claims the court considers "economy and efficiency" and "the similarity of issues of law and fact").

Here, such an assessment is impossible where it is unknown whether there will be an arbitration, and if so, its scope. Such determinations can only be made after an arbitration is initiated and the issues in that separate proceeding are presented.

### B. StudioCanal Would Be Prejudiced If This Action Is Stayed.

Even aside from this fundamental shortcoming, the Court should not issue a stay, as doing so would prejudice StudioCanal. *See CMAX*, 300 F.2d at 267 (identifying possible damage to the non-moving party from the granting of a stay as a consideration). For years, Universal has delayed StudioCanal's ability to assess whether and to what extent it is owed money under the parties' JVA. Initially, Universal made StudioCanal wait three years to commence the audit process. Then, once it started in 2011, Universal denied StudioCanal's auditors access to necessary information, claiming information was missing, or worse, flatly refusing to provide it. Even though hamstrung by Universal, StudioCanal's auditors discovered serious inaccuracies with the Joint Venture accountings. After months of attempting to resolve the dispute with Universal without any progress, StudioCanal sued.

Universal is now continuing along the same path, asking this Court to further delay StudioCanal from discovering the full extent of Universal's malfeasance and to postpone adjudication of these claims. Universal suggests that StudioCanal will not be prejudiced because it only seeks monetary damages. But even if that mattered, Universal ignores the continued and escalating difficulty StudioCanal may face when trying to obtain relevant information from Universal, affiliated entities, or third parties. Indeed, some of the films at issue under the JVA date back over ten years, and Universal has already claimed during the audit process that it cannot locate materials the auditors requested. Further indefinite delay will accomplish nothing but prejudice StudioCanal's ability to adjudicate its rights.

Moreover, Universal suggests that the Court should await resolution of the CDA dispute because it will supposedly inform or obviate issues in this litigation. Mot. at 14. StudioCanal, however, did not agree to arbitrate any of the disputes in this

STUDIOCANAL'S OPPOSITION TO UNIVERSAL'S MOTION TO STAY

1  litigation and certainly did not agree to forgo its discovery rights. Universal would
2  prefer to litigate all issues pursuant to the CDA, which calls for application of JAMS
3  Comprehensive Arbitration Rules and Procedure. JAMS's rules provide truncated
4  discovery rights, including allowing for only <u>one</u> <u>deposition</u>. Any arbitral
5  determination will necessarily be made on a limited record.

6  StudioCanal believes its audits have only scratched the surface of the systemic
7  accounting irregularities at Universal. The efficiency that Universal seeks to impose is
8  first to obtain favorable rulings based on a limited record in the arbitration and then
9  attempt to leverage those rulings to curtail StudioCanal's right to its contractually
10 bargained-for day in Court. StudioCanal is entitled to litigate its claims in a timely
11 fashion with all of the rights afforded to it under the Federal Rules, and not to have
12 those rights indefinitely postponed subject to rulings in a limited proceeding.

13       **C.    <u>A Stay of This Litigation Will Not Promote Judicial Efficiency.</u>**

14       A stay of this litigation pending resolution of a hypothetical arbitration will not
15 enhance judicial economy and will only serve to further delay StudioCanal's ability to
16 enforce its rights under the parties' JVA.

17            1.     <u>Resolution of CDA Disputes Would Not Streamline This Action.</u>

18       Universal argues that the arbitration proceeding "will substantially limit, or
19 perhaps even obviate, the need for litigation before this Court" because "80% of the
20 Findings and 90% of the purported damages quantified in the Audit Reports arise in
21 whole or in part under the CDA." Mot. at 14. In order to support its position,
22 Universal mischaracterizes the audit reports and their import in two critical respects.

23       <u>First</u>, the audit reports do not purport to represent the sum total of
24 StudioCanal's claims in this lawsuit, nor would they represent the sum total of
25 StudioCanal's claims in an arbitration if the parties' mediation is unsuccessful. As
26 explained above, given the expansive scope of the parties' relationship under the JVA
27 and the CDA, StudioCanal's auditors only performed limited audits. For the vast
28 majority of issues, StudioCanal's auditors selected <u>only six films</u>—split between Joint

Venture films and CDA films—to audit. That is less than 15% of the films produced under each agreement. Thus, claims on many issues relating to at least 85% of the films are still unknown. Moreover, for each audited film, StudioCanal's auditors focused on a subset of accounting issues for a subset of territories. Corner Decl., ¶¶ 4, 7, 9 & 11. The percentages cited and relied on in Universal's motion and in the Bradley declaration are therefore misleading. The accounting problems identified in the audits are simply exemplars of the accounting problems across a limited set of films. Gentille Decl., ¶ 12.

Indeed, on April 23, 2013, Universal acknowledged massive errors in its own statements, making over $25 million in corrections on a limited set of issues for just a few motion pictures. Whitman Decl., ¶ 3. With such an error rate, StudioCanal will need to look thoroughly at Universal's accounting across all films covered by the JVA.

Moreover, Universal's skewed percentages are based on audit reports that were limited by Universal's refusal to provide StudioCanal with necessary information. Gentille Decl., ¶ 7; Corner Decl., ¶¶ 6, 13. Universal will not be able to use the same excuses to obstruct discovery in this case, and StudioCanal's claims related to Joint Venture films, even for the issues investigated in the audits, will likely increase if StudioCanal's auditors obtain information they need.

Second, Universal's suggestion that resolution of the CDA claims will narrow or obviate the Joint Venture claims is untrue. Essentially, Universal argues that because it failed to report revenues and because it failed to provide support for expenses for some motion pictures, resolution of those claims for the CDA motion pictures will resolve the claims for all others. However, whether Universal properly accounted for the revenues and expenses for the Joint Venture films is a film-by-film assessment. Gentille Decl., ¶¶ 8-11; Corner Decl., ¶¶ 5, 8, 10 & 12. For example, regardless of whether or how much Universal reported in merchandising revenues for one motion picture, StudioCanal will still need to confirm that Universal did so for all others.

Accordingly, Universal's claim that 80% of the Findings "arise in whole or in

STUDIOCANAL'S OPPOSITION TO UNIVERSAL'S MOTION TO STAY

1  part under the CDA" is sophistry. Mot. at 14 (emphasis added). By way of example,
2  StudioCanal's audit reports make claims for missing pay television revenues, missing
3  music publishing revenues, and unsupported expenses for foreign theatrical
4  distribution (to name only a few) for multiple films. The nature, extent and scope of
5  Universal's failures are unique to each film, as are the associated damages to
6  StudioCanal. That StudioCanal's auditors organized their reports by categories of
7  accounting failures is not an indication that resolution of these claims for CDA films
8  will impact or effect the resolution of the claims for Joint Venture films. Gentille
9  Decl., ¶ 9.

10  Universal also does not explain how or why resolution of disputes regarding
11  these issues for the CDA films will have any bearing on Universal's performance of its
12  obligations under a different contract for a different set of films. In resolving
13  StudioCanal's claims under the JVA, the Court will consider a separate agreement with
14  different contractual provisions that will not be at issue in any future arbitration.
15  Universal attempts to sidesteps this issue by stating that the agreements use "similar"
16  provisions for calculating revenues and expenses. Mot. at 5. This tenuous "similarly"
17  is not sufficient to stay the lawsuit, and stands in stark contrast to the contexts in
18  which courts have used a discretionary stay in order to streamline the litigation.

19  The cases Universal cites stand for the unsurprising proposition that where
20  factual determinations in a separate proceeding are the same as determinations before
21  the court or highly instructive, a stay may be warranted. For example, in *California*
22  *Department of Water Resources v. Powerex Corp.*, 653 F. Supp. 2d 1057 (E.D. Cal. 2009), the
23  court and the Federal Energy Regulatory Commission both considered claims of illegal
24  market manipulation based on factual allegations that the party opposing the stay
25  "virtually conceded" were identical. Similarly, in *Leyva v. Certified Grocers of California,*
26  *Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979), the court found that key factual determinations
27  made in a separate arbitration would assist the resolution of non-arbitrable claims
28  based on the same underlying conduct in the federal action. Universal identifies no

1  such factual determinations to support its request for a discretionary stay.

2  *Ginorio v. State Farm Mutual Automobile Insurance*, No. 2:07-cv-01403-MCE-DAD,
3  2007 WL 2492400, at *2 (E.D. Cal. Aug. 30, 2007), does not support a stay of this
4  case. In *Ginorio*, the court stayed a federal action by an insured against an insurer for
5  bad faith because it reasoned that a determination in an already pending arbitration—
6  whether the insurer actually owed additional monies to the insured under the parties'
7  policy—"may well be critical" to the court's determination of whether the insurer
8  acted in bad faith. *Id.* Again, Universal identifies no such determination that could be
9  made in the hypothetical arbitration that justifies denying StudioCanal its contractual
10 right to litigate its Joint Venture claims in court.

11 In this case, StudioCanal's Joint Venture claims against Universal are governed
12 by a different agreement, relate to different motion pictures, and will be resolved based
13 on examination of a set of facts unique to each one. Whether Universal fully reported
14 pay television revenues for *Hot Fuzz*, a CDA film, will not resolve whether Universal
15 properly accounted for the same category of revenue for *Bridget Jones's Diary*, a Joint
16 Venture film. Just because Universal breached its obligations in the same general
17 fashion on pictures governed by both the CDA and JVA does not mean that
18 resolution of specific issues on the CDA motion pictures—*e.g.*, the amount of
19 underreporting of revenue, the extent of overcharges, and the absence of supporting
20 documentation—will resolve similar claims on the Joint Venture pictures.

21         2. <u>There Would Not Be Duplicative Discovery.</u>

22 Universal also argues that absent a stay there will be "substantial" duplicative
23 discovery. Mot. at 15-16. Not so. As described above, each proceeding concerns a
24 different set of motion pictures with its own unique set of facts. Given the picture-
25 specific nature of these claims, the same amount of discovery will be necessary
26 whether it is conducted in one proceeding or two.

27 This is not a case like *Chronicle Publishing Co. v. National Broadcasting Co.*, on which
28 Universal relies, where both the district court and Federal Communications

- 12 -      STUDIOCANAL'S OPPOSITION TO UNIVERSAL'S MOTION TO STAY

1  Commission were assessing the potential acquisition of a sale of a television station for
2  antitrust issues. 294 F.2d 744 (9th Cir. 1961). In upholding the grant of a stay pending
3  resolution of the FCC proceeding, the Ninth Circuit acknowledged that the "facts
4  material to each examination may in large part be the same." *Id.* at 747. As explained,
5  the facts at issue in this case and the facts at issue in a hypothetical future arbitration
6  would not be "in large part" the same. And, nowhere in its motion does Universal
7  specify how the facts at issue are the same other than by pointing to misleading
8  calculations of the percentage of claims raised in a limited audit on a fraction of the
9  Joint Venture films.

10  Moreover, Universal's parade of duplicative-discovery horribles is easily
11  avoided. Sophisticated parties and counsel frequently work together to avoid any
12  unnecessary or unreasonable burden in coordinated proceedings such as MDL
13  litigation, concurrent state and federal actions, and other common scenarios where the
14  parties agree that discovery for one proceeding may be used in another. If documents
15  produced here are relevant to issues in the arbitration (or vice versa), the parties can
16  and should agree to use them in both actions. Similarly, StudioCanal and Universal
17  can and should coordinate to avoid the need to take multiple depositions of the same
18  witness. Universal seems to assume that this Court would allow its discovery process
19  to inflict needless burden on the parties when these types of concurrent proceedings
20  are so common. The cooperation required is neither novel nor complicated, and here
21  too Universal has failed to carry its burden.

22                 3. <u>There Would Not Be Inconsistent Rulings.</u>

23  Universal next asserts that there is a "substantial risk of inconsistent rulings,
24  incompatible factual findings, and other conflicting rulings as to discovery and
25  evidence" if the Court does not stay this litigation pending resolution of the CDA
26  disputes. Mot. at 16. Universal relies on a string cite of six cases that stand for the
27  basic proposition that the risk of inconsistent rulings weighs in favor of a stay but
28

provides no analysis or explanation for why these cases support a stay under the present circumstances.

The cases Universal cites involve facts that are distinct from this litigation and highlight why a stay is not needed here. In each, the court was asked to reach a resolution on substantially similar issues pending in another proceeding. For example, in *Bischoff v. DirecTV, Inc.*, a court and arbitrator were both going to make an identical determination—*i.e.* whether an antitrust violation had occurred—by assessing the same underlying facts in simultaneous proceedings. 180 F. Supp. 2d 1097 (C.D. Cal. 2002). There, multiple plaintiffs filed an antitrust suit against multiple defendants for illegally attempting to monopolize the sale of high-power direct satellite service. *Id.* at 1102. The court found that one plaintiff's (Bischoff) antitrust claim was subject to an arbitration provision in his contract with one of the defendants (DirecTV). *Id.* at 1106. The dispute with regard to all other parties was not subject to arbitration and remained in federal court. The court stayed the federal case until the conclusion of the arbitration given the potential for divergent determinations over the same issue.[1]

The relationship between StudioCanal's lawsuit and the hypothetical arbitration is unlike any of the cases Universal cites. As described above, the majority of the issues in this case are distinct from those issues that might be subject to an arbitration—they are unique to the specific motion pictures produced under each agreement—and hence there is a low likelihood that the Court's findings will be inconsistent with those of the arbitrator.

---

[1] *See also Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, No. CV 08–5773 JSW, 2009 WL 1010842, at *5 (N.D. Cal. Apr. 14, 2009) (granting request to stay insurer's declaratory relief action because it sought adjudication of the "same factual occurrence involved in the [state court] litigation" and the state court would make "*identical*" findings) (emphasis added); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (staying civil action at request of United States Attorney in light of concurrent criminal proceeding because both actions "concern a number of *identical* option grants and practices" and "*identical* books and records and reporting violations") (emphasis added); *Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F. 2d 961, 963 (4th Cir. 1980) (staying multi-party dispute where two of the parties were required to arbitrate because "questions of fact *common* to all actions pending in the present matter are likely to be settled during the [] arbitration") (emphasis added).

## V. CONCLUSION

For the foregoing reasons, StudioCanal respectfully requests that the Court deny Universal's motion.

Dated: May 13, 2013

Respectfully submitted,

Robert M. Schwartz
James M. Pearl
Harrison A. Whitman
Nikolas A. Primack
O'MELVENY & MYERS LLP

By: /s/ *Robert M. Schwartz*
Robert M. Schwartz
Attorneys for Plaintiff StudioCanal