KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
 *rkendall@kbkfirm.com*
Philip M. Kelly (212714)
 *pkelly@kbkfirm.com*
Ashlee L. Hansen (261002)
 *ahansen@kbkfirm.com*
William A. Jacobson (287593)
 *wjacobson@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   310.556.2700
Facsimile:   310.556.2705

Attorneys for Universal City Studios LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STUDIOCANAL (US), a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL CITY STUDIOS, LLC, a limited liability company and subsidiary of NBCUniversal, LLC, a Delaware limited liability company; UNIVERSAL CITY STUDIOS, INC., a corporation organized under the laws of Delaware; and Does 1-50,<br><br>Defendants. | Case No. CV13-2250 GW (AGRx)<br><br>**REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING**<br><br>Hon. George H. Wu<br><br>Date:   June 3, 2013<br>Time:   8:30 a.m.<br>Crtrm.: 10 |

134121

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 4

    A.    The Court Should Formally Sever Two Of StudioCanal's Claims And Compel Them To Be Included In The Arbitration Proceeding ........................................................................................... 4

    B.    The Court Should Exercise Its Discretion To Stay The Court Proceeding Pending Resolution Of The Parties' Arbitration Proceeding ........................................................................................... 4

        1.    The Mediation/Arbitration Procedures In The CDA Are Sufficient To Justify A Stay And Are Legally Defined As "Arbitration" ........................................................................................... 5

        2.    A Stay Would Promote Efficiency And Minimize The Risk Of Inconsistent Rulings ........................................................................................... 7

            (a)    Substantial Legal and Factual Overlap Exist Between The Court Proceeding And Arbitration Proceeding ........................................................................................... 7

            (b)    The Great Majority Of StudioCanal's Challenges In Its Complaint To Universal's Accounting Policies and Practices Arise Under The CDA ........................................................................................... 10

            (c)    Simultaneous Proceedings Will Likely Result In Substantial Burden From Duplicative Discovery And Effort ........................................................................................... 11

            (d)    The Overlapping Legal And Factual Issues Related To Universal's Accounting Practices And Policies Create A Significant Possibility Of Inconsistent Results ........................................................................................... 12

        3.    StudioCanal's Opposition Ignores That The Denial Of A Stay Would Harm Universal ........................................................................................... 14

        4.    A Stay Would Not Prejudice StudioCanal ................................. 14

    C.    If Appropriate, The Court Can Revisit The Stay At A Post-Mediation Status Conference ........................................................................................... 16

III. CONCLUSION ........................................................................................... 16

134121
i
REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Tech. Servs., Inc. v. Universal Travel Plan, Inc.*,
   2005 WL 2218437 (E.D. Va. 2005) .................................................................. 6

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................................... 13

*Carney v. Verizon Wireless Telecom, Inc.*,
   2010 WL 3058106 (S.D. Cal. Aug. 2, 2010) .................................................. 14

*CB Richard Ellis, Inc. v. Am. Envtl. Waste Mgmt.*,
   1998 WL 903495 (E.D.N.Y. 1998) ................................................................... 6

*Chronicle Publ'g Co. v. Nat'l Broad. Co.*,
   294 F.2d 744 (9th Cir. 1961) ........................................................................... 12

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ....................................................................... 7, 15

*Deirmenjian v. Deutsche Bank, A.G.*,
   2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ................................................ 15

*Design Benefit Plans, Inc. v. Enright*,
   940 F. Supp. 200 (N.D. Ill. 1996) ..................................................................... 6

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857, 863-64 (9th Cir. 1979) ............................................................... 4

*Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*,
   2009 WL 1010842 (N.D. Cal. Apr. 14, 2009) ................................................ 13

*McLeod v. Ford Motor Co.*,
   2005 WL 3763354 (C.D. Cal. April 14, 2005) .................................................. 7

*Med-IM Dev., Inc. v. Gen. Elec. Capital Corp.*,
   2008 WL 901489 (S.D. Tex. Mar. 31, 2008) .................................................... 5

*Milos (1989) Ltd. v. Sunopta Global Organic Ingredients, Inc.*,
   2008 WL 2561643 (N.D. Cal. June 26, 2008) .................................................. 6

*Negotiated Data Solutions, LLC v. Dell Inc.*,
   2008 WL 4279556 (N.D. Cal. Sept. 16, 2008) .......................................... 14, 15

*Parker v. Merck Co.*,
   2007 WL 1840247 (N.D. Cal. June 26, 2007) ................................................ 14

*SEC v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) ........................................................... 13

134121                  ii

REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
   1995 WL 20470 (N.D. Cal. Jan. 13, 1995) ...................................................... 14

134121

iii

REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

## I.     INTRODUCTION

Stripped of its straw man arguments and overheated rhetoric, StudioCanal's Opposition reduces to two arguments: first, that the parties' Arbitration Proceeding incorporates a mediation stage, such that a stay is premature; and second, that the parties' accounting disputes do not overlap across the two major agreements that govern their 11-year relationship. StudioCanal is wrong on both points.

First, Universal's motion to stay in favor of the arbitration procedures set forth in the CDA (the "Motion") is not premature. This Court, whether through its inherent authority or under the Federal Arbitration Act ("FAA"), has the discretion to stay the Court Proceeding in favor of any independent proceeding, regardless of whether that proceeding is "judicial, administrative, or arbitral in character." Courts have repeatedly determined that contractual provisions mandating non-binding mediation before (or even instead of) the commencement of formal arbitration proceedings fall within the definition of "arbitration" under the FAA. The Court has full discretion to stay this Court Proceeding pending resolution of the mediation and arbitration components of the Arbitration Proceeding. Once the Arbitration Proceeding is concluded (either through mediation or an arbitrator's formal opinion), the stay of this Court Proceeding would end. The fact that the Arbitration Proceeding might be terminated early on account of a successful mediation (now tentatively scheduled for July 9), is a reason to *favor* a stay, not to oppose it.

Second, StudioCanal is simply wrong in contending that the "claims concerning each motion picture stand or fall on facts unique to each motion picture," Opp. at 1-2, and that there is no significant overlap between the claims asserted in the Court Proceeding and the claims asserted in the Arbitration Proceeding. According to StudioCanal's logic, the claims it asserts in the Court Proceeding and Arbitration Proceeding, which relate to 44 total films, could have been brought and

efficiently resolved in 44 separate proceedings without any overlap, duplicative efforts, or risk of inconsistent rulings. This is nonsense.

There are numerous overarching legal and factual issues common to the JV Agreement pictures and the CDA pictures. In both the Court Proceeding and the Arbitration Proceeding, StudioCanal is challenging Universal's accounting policies, practices, and systems that cut across all of the films in issue under both the CDA and JV Agreements. Indeed, despite submitting declarations suggesting that the claims are unique to each individual picture, StudioCanal's auditors conceded in one Audit Report that they "assume that Universal applied the same business policies and practices to all of the Working Title films" and therefore "similar issues likely affect the other Working Title films that have not been reviewed." In another Audit Report, StudioCanal's auditors extrapolated alleged damages for the underlying claims across *all* of the pictures produced under both the JV Agreement and the CDA. The premise of the extrapolation is that an accounting practice or system that StudioCanal's auditors challenged as to a few audited films was, in fact, common to all films.

The first step in the Arbitration Proceeding, unless it is settled at the July 9 mediation, will be to identify the allegedly systemic issues and determine whether Universal's methods and policies are consistent with the applicable contract provisions. Only after determining whether Universal's accounting practices and policies are appropriate under the governing contractual provisions would it be necessary to determine the exact amount of overpayment or underpayment, if any, applicable to each picture.

Based on StudioCanal's flawed argument that the audit claims are unique to each picture, StudioCanal contends that there is unlikely to be any duplicative discovery or risk of inconsistent rulings should the two actions proceed simultaneously. At a minimum, there will be substantial duplication in document

discovery and related motion practice between the two actions as the parties address the overarching accounting practices and policies in dispute, including whether such practices comply with the governing agreements. While it is true that deposition discovery in the Arbitration Proceeding is likely to be more limited than in the Court Proceeding, there remains a substantial likelihood that absent a stay both party and non-party witnesses will have to testify at both a trial and an arbitration to discuss the accounting practices and policies at issue. Moreover, the overlapping nature of the challenges to Universal's accounting practices and policies, as applied to all pictures under both agreements, creates a substantial risk of inconsistent rulings. The same accounting practice or policy could be found proper under the JV Agreement and, at the same time, a violation of the CDA, despite the fact that the relevant provisions are virtually identical.

StudioCanal's Opposition also entirely ignores the harm Universal would suffer in the absence of a stay. StudioCanal does not dispute that simultaneous proceedings on largely overlapping legal and factual issues would be inefficient, burdensome, and expensive. Nor does StudioCanal show that it would suffer any burden from a stay, failing to dispute that the infancy of the Court Proceeding strongly favors a stay or that StudioCanal's claims for money damages and an accounting are not time-sensitive. StudioCanal is left to argue that documents may be lost with the passage of time, but this purported harm, which presumably exists in every situation a stay is entered, is baseless here because, consistent with its legal obligations, Universal has instituted a "litigation hold" to preserve all relevant documents, and, in any event, the passage of time is likely to be measured in weeks or months, not years.

Moreover, in the (unlikely) event that, as StudioCanal suggests, the results of the upcoming July 9 mediation somehow counsel against a longer-term stay of the

Court Proceeding in favor of the Arbitration Proceeding, this Court could modify the stay as appropriate at that time.

In sum, all of the relevant considerations in determining the propriety of a stay strongly weigh in favor of the Court exercising its discretion and staying the Court Proceedings.

## II.   ARGUMENT

### A. The Court Should Formally Sever Two Of StudioCanal's Claims And Compel Them To Be Included In The Arbitration Proceeding

StudioCanal concedes in its Opposition that two of the claims it asserted in this Court Proceeding arise under the mandatory arbitration provision in the CDA and therefore must be arbitrated. Accordingly, the Court should issue an order formally severing the claims in paragraphs 24(a) and 37(a) – (b) of the Complaint and compelling such claims to the Arbitration Proceeding under the CDA.

### B. The Court Should Exercise Its Discretion To Stay The Court Proceeding Pending Resolution Of The Parties' Arbitration Proceeding

As Universal demonstrated in its opening brief, trial courts routinely stay actions in circumstances where an independent proceeding may bear upon the matter before the trial court, and the court may exercise this discretion irrespective of whether the "separate proceedings are judicial, administrative, or arbitral in character." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). A stay of the Court Proceeding is proper "even under the assumption that the court is not bound and controlled by the ... conclusions" of the other tribunal, because that other tribunal's findings may still "be of valuable assistance to the court." *Id.* at 863.

Stays are particularly appropriate where, as here, the claims in the two proceedings relate to overlapping factual or legal issues, even if they are not identical. The Southern District of Texas addressed a very similar situation in which

134121

4

REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

one entity was a party to two related agreements, one that contained an arbitration provision and one that did not. *See Med-IM Dev., Inc. v. Gen. Elec. Capital Corp.*, 2008 WL 901489 (S.D. Tex. Mar. 31, 2008). In *Med-IM*, the plaintiff entered into separate contracts with two equipment providers, only one of which contained an arbitration provision. *Id.*, at *1. On the basis of separate but very similar sets of misrepresentations made by the providers, the plaintiff initiated arbitration against one and litigation against the other. *Id.*, at *1, 9. Stating that "[t]he operative facts are not identical and the claims are not inherently inseparable claims, but the facts and claims significantly overlap," the court exercised its discretion to stay the litigation under the FAA, explaining that it would "enable the court and the parties to benefit from the outcome of the arbitration" since the litigation would "involve much of the same evidence developed in the arbitration," and the arbitration would "be faster and more efficient than the litigation, given the relatively limited discovery available and the ability to avoid prolonged motions practice." *Id.*, at *9-10. The court rejected the defendant's argument that it would be prejudiced by delay, stating that "delay will be minimized if the arbitration is vigorously pursued and efficiently conducted. And the litigation is likely to be expedited by the results of the arbitration, which will further reduce the delay that [the defendant] fears." *Id.*, at *10. That precise reasoning applies here.

### 1. The Mediation/Arbitration Procedures In The CDA Are Sufficient To Justify A Stay And Are Legally Defined As "Arbitration"

StudioCanal makes much of the fact that the CDA requires the parties, as a first step, to engage in a non-binding mediation before completing a binding arbitration. Opp. at 6-7. The cases are clear, however, that the inclusion of a mediation stage in an arbitration agreement does not undermine a Court's power to stay litigation in favor of two-stage arbitration proceedings. The Court has

discretion to stay court proceedings in favor of any proceeding that is "judicial, administrative, or arbitral in nature." *Leyva*, 593 F.2d at 863-64.

Courts have repeatedly compelled claims to arbitration and stayed court proceedings in cases involving contractual provisions, like those in the CDA, that require non-binding mediation followed by arbitration. *See*, *e.g.*, *Milos (1989) Ltd. v. Sunopta Global Organic Ingredients, Inc.*, 2008 WL 2561643, at *1 (N.D. Cal. June 26, 2008) (staying action "pending … mediation and, if necessary, arbitration of the parties' dispute" as provided for in the contract); *Design Benefit Plans, Inc. v. Enright*, 940 F. Supp. 200, 206 (N.D. Ill. 1996) (granting "motion to compel mediation/arbitration … and stay proceedings … pursuant to sections 4 and 3 of the FAA, respectively").

Indeed, courts have determined that mediation—even without the follow-on mandatory arbitration that exists here—fits within the definition of "arbitration" and is therefore subject to the FAA. *CB Richard Ellis, Inc. v. Am. Envtl. Waste Mgmt.*, 1998 WL 903495, at *2 (E.D.N.Y. 1998) ("Because the mediation clause in the case at bar manifests the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' 1997 agreement, this mediation clause fits within the [Federal Arbitration] Act's definition of arbitration."); *Am. Tech. Servs., Inc. v. Universal Travel Plan, Inc.*, 2005 WL 2218437, at *1, 2 (E.D. Va. 2005) (holding that "Dispute Resolution Provision" of agreement—which required non-binding mediation but did not mention arbitration—nevertheless "fit within the [FAA's] definition of arbitration" because "the contract … manifest[ed] the parties' intent to provide an alternative method to settle controversies arising under the Agreement"). Accordingly, arbitration proceedings have been initiated here, and StudioCanal's argument to the contrary is merely a diversion from the substantive considerations that weigh in favor of staying the Court Proceeding.

134121
6
REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

### 2. A Stay Would Promote Efficiency And Minimize The Risk Of Inconsistent Rulings

The first consideration for exercising the Court's inherent authority is whether a stay would aid the orderly course of justice, "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The primary considerations for a discretionary stay under the FAA are similar: "economy and efficiency, the similarity of the issues of law and fact to those that will be considered during arbitration, and the potential for inconsistent rulings." *McLeod v. Ford Motor Co.*, 2005 WL 3763354, at *2 (C.D. Cal. April 14, 2005). StudioCanal's Opposition, which is based on a wholly flawed premise that no overlap exists between the two actions, fails to rebut Universal's showing that these considerations strongly favor a stay.

#### (a) Substantial Legal and Factual Overlap Exist Between The Court Proceeding And Arbitration Proceeding

StudioCanal argues that a stay would not promote judicial efficiency because its "claims concerning each motion picture stand or fall on facts unique to each motion picture." Opp. at 1-2. This argument is flatly contradicted by StudioCanal's own audit reports and an analysis of the audit claims asserted in both actions. The relevant contract provisions in the two agreements are very similar (StudioCanal fails to identify a single difference between the agreements other than the obvious difference in the dispute resolution provisions), and, as demonstrated below, the application of those very similar contract provisions to the challenges to Universal's accounting systems and practices is almost entirely overlapping.

As Universal explained in its Motion, StudioCanal's claims in both proceedings attack the common systems and practices that Universal has followed in accounting to StudioCanal across all of the films produced under the JV Agreement

and CDA. As StudioCanal's auditors put it in the Audit Reports on which the Complaint herein is based:

> The Comments and Claims raised throughout this report are based on our review of the Statements and accounting records provided as they relates to these [sample] Pictures. The amounts disclosed in this report represent only a sampling of the total working Title population in the domestic territory. ***However, as we would assume that Universal applied the same business policies and practices to all of the Working Title films, similar issues likely affect the other Working Title films that have not been reviewed.***

Bradley Reply Decl. ¶ 4 (emphasis added). Moreover, StudioCanal contends that the audit claims based on the audited films (which include JV Agreement films and CDA films) can be extrapolated across the entire 44 films produced during the parties' relationship because, according to StudioCanal's auditors, the allegedly wrongful "practices and policies" are not "unique" to each individual motion picture. *Id.* ¶ 3. If they were, neither StudioCanal nor its auditors would be able to ***extrapolate*** audit claims to all of the 44 titles, a process that assumes that the challenged policies and practices identified in connection with the sample titles apply to all titles.

The examples of overlapping legal and factual issues that Universal identified in its Motion aptly demonstrate that the claims are not unique to each picture:

- StudioCanal contends that Universal has engaged in a systemic practice of not retaining all destruction certificates for DVD or VHS inventory that was destroyed, which purportedly justifies the assumption that Universal sold that inventory and failed to report it. StudioCanal's auditors contend that this practice is wrongful in connection with all titles, including those under the JV Agreement and CDA.

- StudioCanal alleges that inconsistencies exist between Universal's internal accounting ledgers and the royalty statements it issued to StudioCanal under both the JV Agreement and CDA, purportedly involving currency exchanges, double

data entries, and related alleged improprieties.  These issues are alleged to permeate Universal's accountings.

- StudioCanal argues that Universal may have, as an overall accounting practice or policy, failed to credit StudioCanal for supplier rebates that StudioCanal contends should reduce manufacturing and distribution expenses.

- StudioCanal contends that Universal has failed to provide contractually-required documentary support for foreign home entertainment, domestic print and advertising, foreign theatrical distribution, and/or domestic video distribution expenses for films under the JV Agreement and CDA.  Again, this is an attack on Universal's accounting policies and practices cutting across all of the films at issue.  The recordkeeping obligations under the JV Agreement and CDA are substantively identical and thus this is yet another overarching legal and factual issue affecting all of the films in dispute.

- StudioCanal alleges that Universal violated the JV Agreement and CDA by maintaining reserves of bad debt for domestic and foreign home entertainment rather than eliminating the reserves and crediting all of StudioCanal's pictures.

- Finally, StudioCanal alleges that Universal systematically failed to report or underreported revenues from pay television, airlines, music publishing, content streaming, and/or product placement under both the JV Agreement and CDA.  While the specific amounts that Universal failed to report or underreported may be specific to each individual picture, the reporting obligations under the JV Agreement and CDA are substantively identical, and thus this is yet another overarching legal and factual issue.

Reply Bradley Decl. ¶ 5.

It is evident from the foregoing that, whether in this Court Proceeding or in the Arbitration Proceeding, the trier of fact will first need to determine whether Universal's accounting "practices and policies" are consistent with its obligations under the substantially similar contractual language in the JV Agreement and CDA.

134121

9

REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

Once that is known, the parties can determine on a picture-by-picture basis whether StudioCanal has been overpaid or underpaid.

### (b) The Great Majority Of StudioCanal's Challenges In Its Complaint To Universal's Accounting Policies and Practices Arise Under The CDA

Universal's Motion included approximate calculations showing how many Findings in each Audit Report arise from just the JV Agreement, just the CDA, or from both the JV Agreement and CDA. *See* Mot. at 7-8. Overall, just a small fraction of the Findings arise solely from the JV Agreement, while over 80% of the Findings and 90% of the purported damages quantified arise in whole or part under the CDA. *Id.* at 8. These calculations support the core premise of Universal's request for a stay: the great majority of StudioCanal's claims in the Court Proceeding and Arbitration Proceeding are overlapping.

Despite StudioCanal's rhetoric that Universal "manufactured conclusions about the percentages of claims in the audit reports that concern one contract versus the other," that "the analysis is distorted and misleading," and that "[Universal's] conclusions are erroneous," Opp. at 2, StudioCanal fails to offer alternative calculations. Nor does StudioCanal contend that a larger number of Findings derive solely from the JV Agreement than the small minority Universal identified. Instead, StudioCanal concludes that Universal's percentages must be wrong because "the audit reports do not purport to represent the total sum of StudioCanal's claims in this lawsuit, nor would they represent the sum total of StudioCanal's claims in an arbitration." Opp. at 9. In doing so, StudioCanal completely ignores that Universal never indicated that the percentages were anything other than calculations based on what currently exists in the audit reports, which is all that is presently available to understand the scope of StudioCanal's claims. StudioCanal's suggestion that it

might have different claims if it studies the accounting practices on unaudited films is rank speculation.

### (c) Simultaneous Proceedings Will Likely Result In Substantial Burden From Duplicative Discovery And Effort

Given the substantial overlap of issues, particularly systemic accounting practices and policies, similar—if not identical—discovery and testimony will be required in both actions.  StudioCanal has already served significantly overbroad and burdensome requests for document production in the Court Proceeding, Reply Kelly Decl., Ex. A, many of which are relevant to claims StudioCanal has asserted with respect to CDA pictures and thus almost certain to be repeated in the Arbitration Proceeding.  These include requests for:  documents related to Working Title's and Universal's general ledgers; documents related to term agreements, first-look deals, overhead deals; all agreements between Universal or Working Title and all vendors, service providers, and licensees; documents related to product placement and commercial tie-ins, exchange rates, and television licensing; documents related to video releases, television sales, related-party revenue transactions, manufacturing costs; documents related to rebates or discounts received from vendors; communications with StudioCanal's auditors; and financial statements for Working Title or any associated entity from January 1, 1999 through the present.  The vast majority of the requested categories of documents are not picture-specific, but rather relate to multi-picture agreements or accounting practices that cut across all of the relevant pictures.

As Universal indicated in its Motion, the key consideration is whether a stay will "eliminat[e] unnecessary duplication" of effort, particularly in situations where a court is "confronted with the prospect of two tremendously complex proceedings simultaneously assembling the same factual data in painstaking detail for the purpose of considering these facts from different points of view." *Chronicle Publ'g*

*Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 747 (9th Cir. 1961).  Here, the parties are dealing with detailed accounting practices and policies and extensive records related to 44 pictures released over 11 years throughout the world on substantially overlapping issues.  Any duplication of effort between the two proceedings could be extremely time-consuming and costly.

The relatively limited discovery in the Arbitration Proceeding, acknowledged by StudioCanal, creates further risk should the two actions proceed simultaneously.  Absent a stay, StudioCanal may attempt to use the devices available in the Court Proceeding to improperly obtain discovery for use in the Arbitration Proceeding.  For example, StudioCanal may seek deposition testimony or interrogatory responses in the Court Proceeding to use in the Arbitration Proceeding.  This undermines the efficiencies and cost-savings intended by the limited discovery procedures available in arbitration.

### (d) The Overlapping Legal And Factual Issues Related To Universal's Accounting Practices And Policies Create A Significant Possibility Of Inconsistent Results

StudioCanal first argues that "there is no known prospect of inconsistent results" because the parties' mediation has yet to occur, making it uncertain which claims will be arbitrated. Opp. at 1.  This argument is meritless.  StudioCanal and Universal are mediating *all* of their disputes, including those arising under the JV Agreement and under the CDA, in July.  Thus, according to StudioCanal's own logic, it does not yet know which issues and claims will remain to be decided in the Court Proceeding.  That "uncertainty" has not stopped StudioCanal from serving overwhelmingly broad and burdensome document production requests that encompass claims that might be resolved in mediation.  In truth, the parties are fully aware of the disputes in both actions.  Moreover, if the mediation successfully resolves some or all of the claims under the CDA, it almost certainly would resolve

the identical claims StudioCanal has raised under the JV Agreement.  Thus, it is almost certain that any remaining claims in the Arbitration Proceeding will also remain in the Court Proceeding, as will the associated risk of inconsistency.

StudioCanal then perpetuates its faulty argument that each audit claim is somehow "unique to the specific motion picture produced under each agreement" and thus that "the majority of the issues in this case are distinct from those issues that might be subject to an arbitration" and there is a "low likelihood that the Court's findings will be inconsistent with those of the arbitrator." Opp. at 14.  As discussed, the vast majority of claims arise from Universal's consistent accounting practices and policies throughout the 11-year relationship and from language that is nearly verbatim between the agreements.  The Court and arbitrator could thus arrive at inconsistent conclusions on law, fact, discovery, and evidence for the exact same policies and practices in the exact same contractual context, as in the examples in Section II.A.2(a).  Case law thus strongly favors a stay.  *See*, *e.g.*, *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) ("[T]he similarity of issues of law and fact in this case to those that will be considered during arbitration, as well as the potential for inconsistent findings absent a stay, persuade the Court that a stay is warranted in the instant matter."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (granting stay and noting dangers of duplicative litigation are "particularly acute with respect to the threat of inconsistent judgments if the Court and/or the jury is asked to resolve issues that are common between both actions"); *Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, 2009 WL 1010842, at *6 (N.D. Cal. Apr. 14, 2009) (granting stay, even though proceedings not identical, where actions were based on same factual occurrence and other proceeding would thus "bear upon the case").

134121

13

REPLY OF UNIVERSAL CITY STUDIOS LLC IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING

### 3. StudioCanal's Opposition Ignores That The Denial Of A Stay Would Harm Universal

StudioCanal's Opposition completely ignores the second of the three *CMAX* factors relevant to determining the appropriateness of a stay of the Court Proceeding:  that Universal would suffer harm if forced to defend substantially overlapping clams in separate, simultaneous proceedings.  As detailed in Universal's Motion, the unnecessary duplication of effort and expense associated with simultaneously defending two overlapping proceedings, such as that which Universal would inevitably face here, is the type of hardship that favors granting a stay.  *See*, *e.g.*, *Negotiated Data Solutions, LLC v. Dell Inc.*, 2008 WL 4279556, at *2 (N.D. Cal. Sept. 16, 2008) (finding that "duplicative litigation costs and the pursuit of broad discovery when a far narrower scope of discovery would be required [after the stay], are sufficient to make a showing of hardship justifying a stay"); *Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 3058106, at *3 (S.D. Cal. Aug. 2, 2010) (finding substantial hardship of defending against claims in litigation, "presumably by engaging in fact and expert discovery, motion practice and trial preparation," favored stay).  Having failed to address this point entirely, StudioCanal has effectively conceded that this factor strongly favors a stay.

### 4. A Stay Would Not Prejudice StudioCanal

StudioCanal does not deny—nor can it—that the Court Proceeding is in its infancy, that StudioCanal will not have wasted resources if a stay is entered, and that as a result it will not be prejudiced by a temporary stay.  *See Parker v. Merck Co.*, 2007 WL 1840247, at *1 (N.D. Cal. June 26, 2007) (fact that case is in beginning stages of litigation favors stay); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995) (absence of "significant discovery" favors stay).  Likewise, StudioCanal does not deny that the monetary damages and accounting it seeks are not time-sensitive and does not challenge the law cited in the

Motion establishing that a delay in damage recovery is not itself irreparable harm dictating against a stay.  *CMAX*, 300 F.2d at 268-269.

Instead, StudioCanal argues, without citing any legal authority, that "indefinite delay" will prejudice it as a result of the "continued and escalating difficulty StudioCanal may face when trying to obtain relevant information and from Universal, affiliated entities or third parties."  Opp. at 8.  StudioCanal does not point to any specific "relevant information" at risk in the event of a delay, nor can it, since it is well-aware of the fact that Universal, consistent with its legal obligations, instituted a document hold to preserve relevant documents and information for the duration of this litigation.  Moreover, a mere delay in litigation proceedings does not itself constitute sufficient hardship to justify denial of a stay so long as the duration of the stay is reasonable.  *See Negotiated Data*, 2008 WL 4279556, at *1 ("The Court finds that the stay, which should not be protracted given the timing of the [other] proceedings, will not harm [defendant].").  Were the law otherwise, courts would never be able to stay one proceeding in favor of another because a stay, by definition, results in delay.

StudioCanal's argument that it "did not agree to arbitrate any of the disputes in this litigation and certainly did not agree to forgo its discovery rights" and would be prejudiced by truncated arbitration discovery is equally misguided.  Opp. at 8-9.  Universal is not seeking to compel arbitration of StudioCanal's claims arising under the JV Agreement, but rather to stay those claims pending the completion of proceedings that may simplify or resolve them.  Even if claims arising under the JV Agreement were resolved in the Arbitration Proceeding, which is not what Universal seeks, the unavailability of certain discovery mechanisms, which has been repeatedly addressed in the context of *forum non conveniens* motions, does not render the Arbitration Proceeding inadequate.  *See*, *e.g.*, *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756, at *10 (C.D. Cal. Sept. 25, 2006) ("[D]ifferences in

the scope and mode of discovery—indeed, even the complete absence of pretrial discovery—do not render a forum inadequate."). Because there will be no legally cognizable prejudice to StudioCanal resulting from a stay, the final *CMAX* factor strongly supports a stay of the Court Proceeding.

## C. If Appropriate, The Court Can Revisit The Stay At A Post-Mediation Status Conference

As noted above, the July mediation will be an attempt to resolve disputes under the JV Agreement and the CDA and may result in complete resolution of both actions. Even if a full settlement is not achieved, the mediation may well reduce the issues in dispute, and clarify whether anything remains to be done in this Court Proceeding that will not first be addressed in the Arbitration Proceeding. If the Arbitration Proceeding is not completely settled, the Court could determine the propriety of perpetuating the stay pending resolution of the Arbitration Proceeding at the status conference scheduled for September 30, 2013, or as soon after the mediation as the Court is available. StudioCanal would thus suffer no prejudice from a stay that lasts until a post-mediation status conference.

## III. CONCLUSION

For the foregoing reasons, as well as those stated in Universal's Motion, Universal respectfully requests that the Court compel to arbitration the disputes in this action that are subject to the mandatory arbitration provision in the CDA and grant its motion for a temporary stay of this litigation pending the completion of the parties' alternative dispute resolution proceedings.

Dated: May 20, 2013           KENDALL BRILL & KLIEGER LLP

                              By: /s/ Philip M. Kelly
                                  Philip M. Kelly
                                  Attorneys for Universal City Studios LLC