KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  *rkendall@kbkfirm.com*
Philip M. Kelly (212714)
  *pkelly@kbkfirm.com*
Ashlee L. Hansen (261002)
  *ahansen@kbkfirm.com*
William A. Jacobson (287593)
  *wjacobson@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Universal City Studios LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STUDIOCANAL (US), a California Corporation, | Case No. CV13-2250 GW (AGRx) |
| Plaintiff, | **REPLY DECLARATION OF PHILIP M. KELLY IN SUPPORT OF MOTION OF UNIVERSAL CITY STUDIOS LLC TO COMPEL ARBITRATION OF CERTAIN DISPUTES AND STAY COURT PROCEEDING** |
| v. | |
| UNIVERSAL CITY STUDIOS, LLC, a limited liability company and subsidiary of NBCUniversal, LLC, a Delaware limited liability company; UNIVERSAL CITY STUDIOS, INC., a corporation organized under the laws of Delaware; and Does 1-50, | Hon. George H. Wu |
| | Date: June 3, 2013 |
| | Time: 8:30 a.m. |
| Defendants. | Crtrm.: 10 |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd,
Suite 1725
Los Angeles, CA 90067

134175.1

## DECLARATION OF PHILIP M. KELLY

I, Philip M. Kelly, declare as follows:

1.      I am an attorney at the law firm of Kendall Brill & Klieger LLP, counsel of record for Universal City Studios LLC ("Universal") in the above-captioned action.  I am a member in good standing of the State Bar of California and am admitted to practice before this Court.  Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      A true and correct copy of "Plaintiff StudioCanal's First Set of Requests for Production to Universal City Studios, LLC," served by StudioCanal (US) on May 15, 2013, is attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed May 20, 2013, at Los Angeles, California.

_____
Philip M. Kelly

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

134175.1

1

REPLY DECLARATION OF PHILIP M. KELLY

Exhibit A

1   Robert M. Schwartz (#117166/rschwartz@omm.com)
    James M. Pearl (#198481/jpearl@omm.com)
2   Harrison A. Whitman (#261008/hwhitman@omm.com)
    Nikolas A. Primack (#274577/nprimack@omm.com)
3   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, Seventh Floor
4   Los Angeles, California 90067-6035
    Telephone:   (310) 553-6700
5   Facsimile:   (310) 246-6779

6   Attorneys for Plaintiff StudioCanal (US)

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11  StudioCanal (US), a California        Case No. CV13-2250 GW (AGRx)
    corporation,
12                                        **DISCOVERY MATTER**
                    Plaintiff,
13                                        **PLAINTIFF STUDIOCANAL'S**
        vs.                               **FIRST SET OF REQUESTS FOR**
14                                        **PRODUCTION TO UNIVERSAL**
                                          **CITY STUDIOS, LLC**
15  Universal City Studios, LLC, a limited
    liability company and subsidiary of
16  NBCUniversal, LLC, a Delaware limited
    liability company; UNIVERSAL CITY
17  STUDIOS, INC., a corporation
    organized under the laws of Delaware;
18  and Does 1-50,

19
                    Defendants.
20

21
    PROPOUNDING PARTY:       STUDIOCANAL
22
    RESPONDING PARTY:        UNIVERSAL CITY STUDIOS, LLC
23
    SET NUMBER:              ONE
24

25

26

27

28

                                          STUDIOCANAL'S FIRST SET OF REQUESTS
                                          FOR PRODUCTION OF DOCUMENTS
                                                **EXHIBIT A**
                                                **Page 2**

1 | TO DEFENDANT UNIVERSAL CITY STUDIOS, LLC, AND ITS COUNSEL
2 | OF RECORD:

3 |     Pursuant to Federal Rule of Civil Procedure 34, plaintiff StudioCanal (US)
4 | demands that at the offices of O'Melveny & Myers LLP, 1999 Avenue of the Stars,
5 | Suite 700, Los Angeles, California 90067, defendant Universal City Studios, LLC
6 | produce and permit the inspection and copying of all documents designated below
7 | that are in its possession, custody or control.  Plaintiff requests that defendant produce
8 | the requested documents as they are kept in the usual course of business, or organized
9 | and labeled to correspond to the categories specified in the document requests below.
10 | Pursuant to Federal Rule of Civil Procedure 34(b), defendant also must serve written
11 | responses to the document requests within thirty (30) days of the service of these
12 | Requests for Production of Documents ("Requests," or individually "Request").

13 |

14 |                              **DEFINITIONS**

15 |     1.     "DOCUMENT[S]" shall be construed in the broadest sense to mean any
16 | and all writings, tangible things, and property of any kind that are now or that have
17 | been in YOUR actual or constructive possession, custody, or control, including, but
18 | not limited to:  any handwritten, typewritten, printed, drawn, charted, taped, filmed,
19 | punched, copied, recorded, transcribed, graphic, or photographic matter of any kind or
20 | nature, in, through, or from which information may be embodied, translated,
21 | conveyed, or stored, whether an original, a draft, or copy, however produced or
22 | reproduced, whether sent or received or neither, including, but not limited to, notes,
23 | memoranda, correspondence, text messages, instant messages, letters, facsimiles and
24 | facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work
25 | papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures,
26 | price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts,
27 | purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts,

28 |

1  purchase orders, estimates, recordings, transcriptions of recordings, records, books,

2  pamphlets, periodicals, publications, papers, tapes, video, audio and digital recordings,

3  television commercials, website or other spot advertisements, prototypes, products,

4  calendars, charts, diaries, drawings, sketches, messages, lab notebooks, photographs,

5  and any "active" or "backup" data contained in or accessible through any electronic

6  data processing system, including, but not limited to, computer databases, data sheets,

7  data processing cards, computer files and tapes, computer disks, CD-ROMs, computer

8  meta-data, microfilm, microfiche, electronic mail, website and web pages and

9  transcriptions thereof, and all other memorializations of any conversations, meetings

10  and conferences, by telephone or otherwise.  The term DOCUMENT also means

11  every copy of a DOCUMENT, where such copy is not an identical duplicate of the

12  original, whether because of deletions, underlinings, showing of blind copies, initialing,

13  signatures, receipt stamps, comments, notations, differences in stationery, or any other

14  difference or modification of any kind.  The term DOCUMENT includes

15  COMMUNICATIONS.

16      2.      "COMMUNICATION[S]" refers to any DOCUMENT that comprises,

17  embodies, reflects, or refers to any transmission of information from one person to

18  another, including, without limitation, by personal meeting, conversation, letter,

19  telephone, facsimile, electronic mail, instant messaging, text messaging or development

20  notes.  Each Request that encompasses information relating in any way to

21  COMMUNICATIONS to, from, or within a business or corporate entity is hereby

22  designated to mean, and should be construed to include, all COMMUNICATIONS by

23  and between representatives, employees, agents, or servants of the business or

24  corporate entity.  Any reference to "all COMMUNICATIONS" refers to all

25  DOCUMENTS that RELATE TO COMMUNICATIONS.

26      3.      "AUDIT REPORTS" means the audit reports described in paragraph 22

27  of StudioCanal's Complaint in the above referenced matter.

28

- 2 -

4.      "GRANT THORNTON" means Grant Thornton UK LLP and any person and/or affiliate acting on its behalf.

5.      "GREEN HASSON JANKS" means Green Hasson & Janks LLP and any person and/or affiliate acting on any on its behalf.

6.      "JOINT VENTURE AGREEMENT" means the agreement titled "Memorandum of Agreement" dated January 1, 1999 between Universal Pictures, a division of Universal City Studios, Inc. and StudioCanal (US), and amended and restated as of January 1, 2001.

7.      "PERSON" refers to any natural person, firm, association, organization, partnership, business trust, corporation, or public entity.

8.      "UNIVERSAL," "YOU," or "YOUR" refers to Universal City Studios, LLC., all members, parents, or other affiliates, predecessor or successor companies, any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other person, and/or affiliate acting on any of their behalf.

9.      "RELATE TO" means a DOCUMENT or DOCUMENTS that concern, refer to, summarize, reflect, constitute, comprise, state, contain, embody, pertain to, identify, are involved with, mention, discuss, consist of, show, comment upon, evidence, support, respond to, deal with, describe, analyze, refute, contradict, or are in any way pertinent to that subject, directly or indirectly, in whole or in part.

10.      "STUDIOCANAL" means StudioCanal (US), all members, parents, or other affiliates, predecessor or successor companies, any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other person, and/or affiliate acting on any of their behalf.

- 3 -

1       11.   "WT1 FILMS" refers to the 21 Working Title motion pictures produced

2 and distributed pursuant to the January 1, 1999 Memorandum of Agreement (as

3 amended and restated on January 1, 2001). A complete list of the motion pictures is

4 attached hereto as Exhibit A.

5       12.   "WORKING TITLE" means Working Title Films, all members, parents,

6 or other affiliates, predecessor or successor companies, any and all divisions thereof,

7 and any and all present and former officers, directors, representatives, shareholders,

8 agents, employees, attorneys, accountants, investigators, interns, or any other person,

9 and/or affiliate acting on any of their behalf, including Transatlantic Productions LLC

10 and Working Title Group, Inc.

11       13.   The terms "and" and "or" will be construed both conjunctively and

12 disjunctively, and each will include the other whenever such a dual construction would

13 serve to bring within a category DOCUMENTS or information that would not

14 otherwise be within its scope.

15       14.   The terms "all" or "any" mean "any, all, each, and every."

16       15.   The singular form shall include the plural and vice versa whenever such

17 dual construction will serve to bring within the scope of any Request DOCUMENTS

18 that would otherwise not be brought within its scope.

19

20                               **INSTRUCTIONS**

21       1.   These Requests call for the production of all responsive DOCUMENTS

22 that are within YOUR possession, custody or control. A document is in YOUR

23 "possession, custody, or control" if it is in YOUR physical possession, or if, as a

24 practical matter, YOU have the ability, upon request, to obtain possession of the

25 DOCUMENT or a copy thereof from another PERSON or entity that has physical

26 possession of the DOCUMENT.

27

28                                 - 4 -

1      2.     The Requests are limited to DOCUMENTS created on or after January

2  1, 1999, unless otherwise specified.

3      3.     Whenever YOU object to a particular Request, or portion thereof, YOU

4  must produce all DOCUMENTS called for which are not subject to that objection.

5      4.     If any DOCUMENT covered by these Requests is withheld by reason of

6  a claim of attorney-client privilege, attorney work product protection, or any other

7  privilege or protection, please furnish a log providing the following information with

8  respect to each such withheld DOCUMENT:  date; author; recipients; general subject

9  matter; and legal basis upon which the DOCUMENT has been withheld.  If work

10  product protection is labeled, please also include the matter for which the document

11  was created.

12      5.     With respect to any DOCUMENT maintained or stored electronically,

13  please harvest it in a manner that maintains the integrity and readability of all data,

14  including all metadata.

15      6.     Please produce all DOCUMENTS maintained or stored electronically in

16  TIFF format (branded with production numbers and, as appropriate, redactions and

17  any applicable protective order labels) accompanied by data files which reference the

18  beginning and ending image bates numbers of each document and associated image

19  cross-reference files, family group indications, and with all metadata intact and in an

20  appropriate and useable manner. Encrypted or password-protected DOCUMENTS

21  should be produced in a form permitting them to be reviewed.

22      7.     Please produce Excel files in native format.

23      8.     Please organize electronic DOCUMENTS produced for inspection in the

24  same manner that YOU store them (*e.g.*, if maintained by a custodian, such as email

25  residing on an email server, please organize DOCUMENTS for production by

26  custodian; if maintained in a subfolder of "My documents" on a custodian's hard

27

28

- 5 -

1  drive, please organize DOCUMENTS for production by custodian with path

2  information preserved, etc.).

3       9.    To the extent responsive DOCUMENTS reside on databases and other

4  such systems and files, YOU are requested to produce the relevant database in useable

5  form and/or permit access for inspection, review, and extraction of responsive

6  information.

7       10.   These Requests require production of paper DOCUMENTS in the same

8  form and same order as they are kept in the usual course of business, or organized and

9  labeled to correspond with the Requests set forth below.  If you choose the former

10  method, the DOCUMENTS are to be produced in the boxes, file folders, bindings or

11  other containers in which the DOCUMENTS are found.  The titles, labels or other

12  descriptions on the boxes, file folders, bindings or other containers are to be left

13  intact.

14       11.   For any DOCUMENT or category of DOCUMENTS that was, but no

15  longer is, in YOUR possession, custody or control, please describe each such

16  DOCUMENT as completely as possible and provide the following information:

17           (a)   The reason the DOCUMENT is no longer in YOUR possession,

18                 custody or control;

19           (b)   The PERSON or entity, if any, who has possession, custody or

20                 control or, if unknown, so state;

21           (c)   If the DOCUMENT was destroyed or otherwise disposed of, state

22                 (i) the manner of disposal (i.e. destruction, loss, discarding or other

23                 means of disposal); (ii) the date of disposal; (iii) the reason for

24                 disposal; (iv) the PERSON authorizing disposal; (v) the PERSON

25                 disposing of the DOCUMENT; and (vi) the name and address of

26                 the most recent custodian of the DOCUMENT.

27

28

- 6 -

1      12.    If any DOCUMENT or category of DOCUMENTS is not produced in

2 full, please state with particularity the reason or reasons it is not being produced in full,

3 and describe, to the best of YOUR knowledge, information, and belief, and with as

4 much particularity as possible, the DOCUMENT or portions of the DOCUMENT

5 that are not being produced.

6      13.    Each Request shall be construed independently and no Request shall be

7 viewed as limiting the scope of any other Request.

8      14.    No part of a Request shall be left unanswered merely because an

9 objection is made to another part of the Request.

10      15.    If an objection is made to any of these Requests, the response shall state

11 whether DOCUMENTS are being withheld from inspection and production on the

12 basis of such objection, or whether inspection and production of the responsive

13 DOCUMENTS will occur notwithstanding such objection.

14      16.    The collection and production of DOCUMENTS shall be performed in a

15 manner that ensures that the source of each DOCUMENTS may be determined, if

16 necessary.

17      17.    DOCUMENTS attached to each other shall not be separated and the

18 parent-child relationship of documents must be kept intact

19      18.    These Requests impose a continuing obligation subsequent to YOUR

20 initial production to timely supplement YOUR response or production if YOU

21 determine that YOUR response or production is incomplete or incorrect.

22

23               **CATEGORIES OF DOCUMENTS REQUESTED**

24     1.    Chart of accounts for WORKING TITLE'S general ledger.

25     2.    All DOCUMENTS supporting the development costs charged to

26 STUDIOCANAL for WT1 FILMS contained within WORKING TITLE'S general

27 ledger.

28

- 7 -

3.   All DOCUMENTS RELATED TO term deals in effect at any point during the period January 1, 1999 through December 31, 2003, including, but not limited to, first-looks deals, overhead deals, and consultancy deals.

4.   All DOCUMENTS supporting the acquisition costs charged to STUDIOCANAL for WT1 FILMS contained within WORKING TITLE'S general ledger.

5.   All DOCUMENTS supporting the overhead expenses charged to STUDIOCANAL for WT1 FILMS contained within WORKING TITLE'S general ledger.

6.   WORKING TITLE'S general ledger for each of the WT1 FILMS, including, but not limited to, revenues, expenses, and production costs.

7.   The executed production budget for each of the WT1 FILMS.

8.   The production cost bible for each of the WT1 FILMS.

9.   The certified production cost audit report for each of the WT1 FILMS.

10.   All DOCUMENTS RELATED TO vendor proposals for WT1 FILMS.

11.   All DOCUMENTS RELATED TO service agreements with UNIVERSAL for WT1 FILMS, including, but not limited to, service agreements, amendments to the service agreements, and records of payments made pursuant to service agreements.

12.   All DOCUMENTS RELATED TO the service agreements with WORKING TITLE for WT1 FILMS, including, but not limited to, the service agreements, amendments to the service agreements, and records of payments made pursuant to the service agreements.

13.   All DOCUMENTS RELATED TO the use of commercial products in or RELATED TO WT1 FILMS as product placements, product integrations, commercial tie-ins, or cross promotional deals, including, but not limited to, contracts,

- 8 -

1   amendments to contracts, other memorialization of agreements, and clearance

2   agreements.

3       14.    All DOCUMENTS memorializing agreements to set or lock in currency

4   exchange rates in foreign markets ("forward contracts") for each of the WT1 FILMS.

5       15.    DOCUMENTS sufficient to show a statement of the assets at the close

6   of production for each of the WT1 FILMS.

7       16.    All financial statements for WORKING TITLE and any associated entity

8   through which WORKING TITLE conducts or conducted business (including

9   Transatlantic Productions LLC and Working Title Group, Inc.), from January 1, 1999

10  through the present.

11      17.    DOCUMENTS sufficient to show the cash receipt of income for each of

12  the WT1 FILMS.

13      18.    All DOCUMENTS supporting the theatrical booking terms for each of

14  the WT1 FILMS in all territories.

15      19.    Chart of accounts for UNIVERSAL'S general ledger.

16      20.    UNIVERSAL'S general ledger for each of the WT1 FILMS, including,

17  but not limited to, revenues and expenses.

18      21.    DOCUMENTS sufficient to show the release dates in all territories and

19  all media for each of the WT1 FILMS.

20      22.    DOCUMENTS sufficient to show the box office income for each of the

21  WT1 FILMS in all territories.

22      23.    All DOCUMENTS RELATED TO the agreements with Miramax Film

23  Corporation for any of the WT1 FILMS, including, but not limited to, contracts,

24  amendments to contracts, other memorialization of agreements, statements reported

25  and payments made to or from Miramax Film Corporation, audit reports, and

26  settlement agreements.

27

28

1    24.    All DOCUMENTS RELATED TO the agreements with sales agents and

2    subdistributors for any of the WT1 FILMS, including, but not limited to, contracts,

3    amendments to contracts, other memorialization of agreements, statements reported

4    and payments made from sales agents and subdistributors, audit reports of sales agents

5    and subdistributors, and settlement agreements.

6    25.    DOCUMENTS sufficient to show all related-party revenue transactions

7    for each of the WT1 FILMS including, but not limited to, license agreements.

8    26.    DOCUMENTS sufficient to show a complete list of the television sales

9    for each of the WT1 FILMS.

10    27.    All DOCUMENTS RELATED TO the television license agreements for

11    any of the WT1 FILMS, including, but not limited to, contracts, amendments to

12    contracts, and other memorialization of agreements.

13    28.    DOCUMENTS sufficient to show all video releases for each of the WT1

14    Films.

15    29.    DOCUMENTS sufficient to show a unit inventory reconciliation for

16    each of the WT1 FILMS (*e.g.*, the number of VHS, DVD, and Blu-ray DVD units

17    manufactured, sold, returned, given away for free, destroyed, and remaining in ending

18    inventory as of June 30, 2012) including, but not limited to, certified physical inventory

19    reports for all VHS, DVD, and Blu-ray DVD units on hand for each of the WT1

20    FILMS as of June 30, 2012, and destruction certificates for all units of WT1 FILMS

21    destroyed.

22    30.    DOCUMENTS sufficient to show all video unit purchase orders for each

23    of the WT1 FILMS.

24    31.    DOCUMENTS RELATED TO manufacturing costs for each of the

25    WT1 FILMS, including, but not limited to, invoices, replication agreements, and

26    rebates.

27

28

- 10 -

32.   DOCUMENTS RELATED TO the VHS, DVD and Blu-ray standard costs charged to each of the WT1 FILMS, including, but not limited to, the per-unit standard cost amount (broken down by base price, macro-vision, freight, rebate, and other), and the number of units charged.

33.   All DOCUMENTS RELATED TO agreements with Netflix, including, but not limited to, contracts, amendments to contracts, and other memorialization of agreements.

34.   All DOCUMENTS RELATED TO license agreements for the distribution of any of the WT1 FILMS over the internet, including, but not limited to, contracts, amendments to contracts, other memorialization of agreements.

35.   DOCUMENTS sufficient to show all claims submitted for copyright and retransmission revenues for each of the WT1 FILMS, including, but not limited to, statements reported and payments received for copyright and retransmission revenues.

36.   DOCUMENTS sufficient to show the value of any equity or other rights UNIVERSAL has or had in Hulu.

37.   DOCUMENTS sufficient to show all merchandising and publishing licenses for each of the WT1 FILMS.

38.   All DOCUMENTS RELATED TO the soundtrack agreements for each of the WT1 FILMS, including, but not limited to, contracts, amendments to contracts, other memorialization of agreements, statements reported and payments made from soundtrack licensees, audits reports of soundtrack licensees, and settlement agreements.

39.   All agreements between YOU and Universal Music Group ("UMG") by which YOU licensed or authorized UMG to exploit any rights in or to motion pictures during the period 1999 to the present.

40.   DOCUMENTS sufficient to show all revenue UMG received from the exploitation of rights in or to any of the WT1 FILMS.

- 11 -

1    41.    DOCUMENTS sufficient to show all revenues UMG paid YOU for the

2    exploitation of rights in or to any of the WT1 FILMS.

3    42.    DOCUMENTS sufficient to show all settlements between YOU and

4    UMG entered into at any point during the period from 1999 to the present.

5    43.    All DOCUMENTS RELATED TO agreements between YOU and

6    Universal Music Publishing Group, including, but not limited to, contracts,

7    amendments to contracts, other memorialization of agreements, and statements

8    reported and payments made to YOU from Universal Music Publishing Group

9    RELATED TO WT1 FILMS.

10    44.    DOCUMENTS sufficient to show the advertising and marketing budgets

11    for the film "The Guru."

12    45.    DOCUMENTS sufficient to show the advertising and marketing budgets

13    for the film "Thunderbirds."

14    46.    All DOCUMENTS RELATED TO agreements between YOU or

15    WORKING TITLE, on the one hand, and any persons or entities entitled to receive

16    any form of contingent compensation (e.g., a participation in adjusted gross receipts or

17    defined proceeds), on the other hand, for each of the WT1 FILMS, including, but not

18    limited to, contracts, amendments to contracts, other memorialization of agreements,

19    and statements and payments made to such persons or entities.

20    47.    DOCUMENTS sufficient to show the payment of residuals for each of

21    the WT1 FILMS.

22    48.    DOCUMENTS sufficient to show the remittance tax rate in effect for

23    each year from 1999 to the present, in each territory in which any of the WT1 FILMS

24    was broadcast or distributed.

25    49.    All DOCUMENTS RELATED TO any agreement between

26    WORKING TITLE or YOU, on the one hand, and Tim Bevan (including any

27    personal services entity through which he rendered services), on the one hand

28

- 12 -

1  (including the January 1, 1999 agreement and the November 1, 2001 amendment

2  thereto), including, but not limited to, contracts, amendments to contracts, other

3  memorialization of agreements

4     50.    Sufficient documents to establish all payments made to Tim Bevan (or

5  any personal services entity through which he rendered services) pursuant to any

6  agreement identified in response to the prior Request, including all participation

7  statements issued.

8     51.    All DOCUMENTS RELATED TO any agreement between

9  WORKING TITLE or YOU, on the one hand, and Eric Fellner (including any

10  personal services entity through which he rendered services), on the one hand

11  (including the January 1, 1999 agreement and the November 1, 2001 amendment

12  thereto), including, but not limited to, contracts, amendments to contracts, other

13  memorialization of agreements

14     52.    Sufficient documents to establish all payments made to Eric Fellner (or

15  any personal services entity through which he rendered services) pursuant to any

16  agreement identified in response to the prior Request, including all participation

17  statements issued.

18     53.    All DOCUMENTS RELATED TO third-party financing or funding for

19  each of the WT1 FILMS.

20     54.    All DOCUMENTS RELATED TO sale and leaseback agreements for

21  each of the WT1 FILMS, including, but not limited to, the sale and leaseback

22  agreements and records of payments received from the sale and leaseback agreements.

23     55.    DOCUMENTS sufficient to show the shooting locations for each of the

24  WT1 FILMS.

25     56.    All DOCUMENTS sufficient to show any production incentives received

26  for each of the WT1 FILMS, including, but not limited to, production subsidies,

27  rebates, bond credits, and tax credits.

28

- 13 -

57. All DOCUMENTS RELATED TO vendor agreements for WT1 FILMS, including, but, not limited to, agreements with advertising vendors (e.g., Arenas Entertainment, LLC; DDB Needham Worldwide Inc.; TBWA/Chiat/Day; and Special Ops Media) and print vendors (e.g., Andersen Merchandisers; Christie AIX Inc.; Deluxe Media Service; Framestore CFC; Mosaic Solutions Freight; Sonopress LLC; and Technicolor), including, but not limited to, contracts, amendments to contracts, other memorialization of agreements, and statements reported and payments made to vendors.

58. DOCUMENTS sufficient to show all discounts or rebates received by YOU or WORKING TITLE for any of the WT1 FILMS.

59. DOCUMENTS sufficient to show whether YOU or WORKING TITLE claimed on any United States tax return to have paid or incurred foreign taxes for any years in connection with each of the WT1 FILMS, including documents to show .

60. DOCUMENTS sufficient to show the names of all WORKING TITLE owners, officers, directors, or employees from January 1, 1999 through December 31, 2003.

61. All DOCUMENTS RELATED TO the negotiation, interpretation, amendment, or modification of the JOINT VENTURE AGREEMENT.

62. All COMMUNICATIONS RELATED TO the request by STUDIOCANAL to audit UNIVERSAL and WORKING TITLE.

63. All COMMUNICATIONS between YOU and GREEN HASSON JANKS RELATED TO WT1 FILMS.

64. All COMMUNICATIONS between YOU and GRANT THORNTON RELATED TO WT1 FILMS.

- 14 -

65.     All DOCUMENTS RELATED TO requests made by GRANT
THORNTON or GREEN HASSON JANKS to YOU or WORKING TITLE
concerning WT1 FILMS.

66.     All COMMUNICATIONS RELATED TO matters in the AUDIT
REPORTS concerning WT1 FILMS.

67.     All COMMUNICATIONS RELATED TO the preparation of
accounting statements for WT1 FILMS.

68.     All DOCUMENTS RELATED TO meetings or communications on or
after September 1, 2012 between YOU and STUDIOCANAL concerning the JOINT
VENTURE AGREEMENT or any of the WT1 FILMS, including but not limited to,
the October 2012 meeting between STUDIOCANAL and UNIVERSAL in Los
Angeles, California.

69.     DOCUMENTS sufficient to show any request for an audit made by any
PERSON pertaining to any of the WT1 FILMS.

70.     All DOCUMENTS RELATED TO any audits conducted by any
PERSON pertaining to any of the WT1 FILMS, including, but not limited to, audit
reports and COMMUNICATIONS about the audit reports.

71.     All audit reports of motion pictures or television programs that YOU
initially released at any point between 1999 and 2003 that contain a claim or open issue
RELATED TO incomplete or missing records.

72.     All DOCUMENTS, including audit reports, RELATED TO any audits
YOU conducted with regard to any of the WT1 FILMS.

73.     All DOCUMENTS and COMMUNICATIONS during the period 1999
to the present evaluating or critiquing YOUR policies, practices, or procedures
RELATED TO accounting to persons or entities entitled to any form of contingent
compensation on any motion picture or television program, including record-keeping
practices, errors, accuracy, completeness of information reported, inclusion or

- 15 -

1   omission of revenue, errors or overcharging of costs and expenses, accruals, reserves,

2   and allocations of items of revenue or expense.

3       74.   DOCUMENTS sufficient to show YOUR efforts to maintain accounting

4   and other records RELATED TO the WT1 FILMS.

5       75.   DOCUMENTS sufficient to show YOUR efforts to maintain

6   documentation supporting expenses YOU or WORKING TITLE charged to WT1

7   FILMS.

8       76.   All DOCUMENTS created during YOUR preparation of the June 30,

9   2012 Statement of Accounts for WT1 FILMS, including but not limited to work

10  papers and work sheets.

11      77.   All DOCUMENTS YOU used or relied upon to prepare the June 30,

12  2012 Statement of Accounts for WT1 FILMS.

13      78.   All DOCUMENTS supporting the $11,972,480.00 YOU claimed in

14  overpayments to STUDIOCANAL as a result of improper calculations regarding third

15  party participations, as described in Richard Kendall's April 23, 2013 correspondence

16  to STUDIOCANAL'S attorneys (the "April 23, 2013 letter").

17      79.   All DOCUMENTS RELATED TO the original receipt of music

18  publishing revenues YOU received from UMG, as described in the April 23, 2013

19  letter.

20      80.   All DOCUMENTS YOU used to match the music publishing revenues

21  received from UMG to WT1 FILMS, as described in the April 23, 2013 letter.

22      81.   All DOCUMENTS RELATED TO YOUR recalculation of home video

23  revenue from Italy for the film *Bridget Jones: Edge of Reason*, including but not limited to,

24  the original data feed and customer file, as described in the April 23, 2013 letter.

25      82.   All DOCUMENTS supporting the $6,456,703.00 of previously

26  unreported foreign home video revenue for the film *Ned Kelly*, as described in the April

27  23, 2013 letter.

28
                                    - 16 -

1    83.    All information from each system used to store foreign home video

2  revenue data for the film *Ned Kelly*.

3    84.    All DOCUMENTS supporting the $313,664.00 of previously unreported

4  airline revenue for WT1 FILMS, as described in the April 23, 2013 letter.

5    85.    The original territory mapping that resulted in the exclusion of the

6  $313,664.00 of airline revenue for WT1 FILMS, as described in the April 23, 2013

7  letter.

8

9  Dated:  May 15, 2013                    Robert M. Schwartz

10                                          James M. Pearl
                                           Harrison A. Whitman
                                           Nikolas A. Primack
11                                          O'MELVENY & MYERS LLP

12

13                                          By: _____

14                                               Robert M. Schwartz
                                           Attorneys for Plaintiff StudioCanal (US)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

## EXHIBIT A

| |
|---|
| O Brother, Where Art Thou? |
| Billy Elliot |
| The Man Who Cried |
| Bridget Jones's Diary |
| Captain Corelli's Mandolin |
| Long Time Dead |
| Ali G Indahouse |
| 40 Days and 40 Nights |
| About a Boy |
| The Guru |
| My Little Eye |
| Ned Kelly |
| Johnny English |
| Love Actually |
| Shaun of the Dead |
| The Calcium Kid |
| Thunderbirds |
| Wimbledon |
| Rory O'Shea Was Here |
| Bridget Jones:  The Edge of Reason |
| Mickybo and Me |

## PROOF OF SERVICE - PERSONAL SERVICE

1

2

3     I am a citizen of the United States and employed in the County of Los Angeles, State of

4  California.  My business address is First Legal Support Services, 1517 W. Beverly Blvd., Los Angeles,

5  CA 90026.  I am over the age of eighteen years and not a party to the within action.  On May 15,

6  2013, I personally served the following:

7

8    **PLAINTIFF STUDIOCANAL'S FIRST SET OF REQUESTS FOR**
   **PRODUCTION TO UNIVERSAL CITY STUDIOS, LLC**
9

10  by personally delivering the document(s) listed above to the office of the person(s) at the address(es)

11  set forth below, and either handing the copy to the person named below or leaving it with the

12  receptionist or other person having charge of the office thereof.

13     Richard B. Kendall, Esq.
       Philip M. Kelly, Esq.
14     Ashlee L. Hansen, Esq.
       William A. Jacobson, Esq.
15     KENDALL BRILL & KLIEGER LLP
       10100 Santa Monica Boulevard
16     Suite 1725
       Los Angeles, CA  90067
17

18     I declare under penalty of perjury under the laws of the State of California that the above is

19  true and correct.  Executed on May 15, 2013, at Los Angeles, California.

20

21

22

23     Messenger:  _____

24

25     Printed Name:  _____

26

27

28

PROOF OF SERVICE
CV13-2250 GW (agrx)

**EXHIBIT A**
**Page 21**